PHILLIP J. ESKENAZI (State Bar No. 158976)
peskenazi@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020

[Additional Counsel Listed on Signature Page]

Attorneys for Plaintiff
BOARDRIDERS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| BOARDRIDERS, INC., | Case No.:  8:21-cv-01260 |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| GREAT AMERICAN INSURANCE COMPANY, | |
| Defendant. | |

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

Plaintiff Boardriders, Inc. ("Boardriders") brings this action against defendant Great American Insurance Company ("GAIC"), and alleges as follows:

## NATURE OF THE CASE

1. This is a civil action about GAIC's continued refusal to pay Boardriders' covered losses resulting from an October 2019 ransomware attack.

2. Boardriders bought a "Corporate Protection Insurance" policy ("Policy") from GAIC for the policy period of January 15, 2017 through January 17, 2020, specifically purchased to cover that exact kind of loss given how pervasive cyber ransomware attacks are in the industry. Instead, Boardriders has suffered two devastating losses – the extensive damage caused by a ransomware attack and the loss incurred due to GAIC's refusal to honor the insurance coverage that Boardriders purchased to protect itself against such an attack.

3. The Policy specifically covers "Extortion," defined to include "the making of illegal threats either directly or indirectly to the Assured . . . to . . . introduce any virus, worm, logic bomb or Trojan Horse into the Assured's computer systems which indiscriminately replicates itself and automatically disseminates itself causing damage, destruction, erasure, alteration or corruption of computerised data; by persons who then demand a Ransom as a condition of not carrying out such threats." Policy, Enhanced GAIC SCR Amendatory Endorsement (v.07.11).

4. Boardriders experienced just such an Extortion in October 2019 when a ransomware attack locked down Boardriders' computer systems worldwide and the perpetrator made a Ransom demand for approximately $25 million as a condition of not carrying out further damage and destruction.

5. Boardriders provided prompt notice of the ransomware attack to GAIC. However, GAIC failed to issue a coverage position until approximately eight months after the ransomware attack, despite repeated follow-up from Boardriders.

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

COMPLAINT

**Hunton Andrews Kurth LLP**
**550 S. Hope Street, Suite 2000**
**Los Angeles, California 90071**

6.   In consultation with law enforcement and others, Boardriders investigated, worked to end the attack, shut the perpetrator out of its systems, and restore data from its back-ups, and was able to avoid paying the Ransom.

7.   Boardriders submitted its first partial proof of loss submission to GAIC in March 2020, for Boardriders' incurred costs and expenses resulting from the ransomware attack and efforts to investigate the cause, scope, and extent of the attack; communicate with the threat actor; secure Boardriders' computer system from a continued attack by the threat actor; remediate and restore data and systems; and mitigate loss.

8.   In early June 2020, Boardriders submitted a second partial proof of loss submission to GAIC for costs and expenses. Boardriders also submitted a detailed loss submission of its business interruption losses prepared by its outside forensic accountants, Crowe LLP ("Crowe").

9.   GAIC failed to issue its initial coverage position to Boardriders until late June 2020 – eight months after the ransomware attack and over three months after Boardriders' initial loss submission.

10.   Boardriders repeatedly asked GAIC to comply with the Policy and reimburse Boardriders for its covered expenses and business income loss.

11.   To date, 21 months since the ransomware attack occurred, GAIC has paid less than half of Boardriders' covered losses.

12.   GAIC has ignored multiple communications, submissions, and proofs of loss; failed to take positions on coverage and when it ultimately did, it took unreasonable positions about policy terms; made repeated demands for the same documents time after time, despite having been provided all reasonably relevant documentation weeks or months prior; and GAIC generally placed its interests above those of its insured, all of which constitutes bad faith.

13.     Boardriders brings this civil action against GAIC to recover its yet-to-be reimbursed covered losses and damages that it incurred as a result of GAIC's bad faith conduct.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

15.     Venue is properly placed under 28 U.S.C. § 1391, as this is a diversity action and a substantial part of the events giving rise to this Complaint occurred in this district.

## PARTIES

16.     Plaintiff Boardriders is a leading action sports and lifestyle company that designs, produces and distributes branded apparel, footwear, and accessories for surfing, skating, snow sports, and lifestyle consumers around the world. Boardriders' principal place of business is in Huntington Beach, California. Boardriders is licensed to do business, and is transacting business, in the State of California.

17.     Defendant GAIC is a company organized under the laws of Ohio with its principal place of business in Cincinnati, Ohio. GAIC is an authorized insurer in the State of California, licensed to sell insurance in the state of California, and, on information and belief, regularly solicits and conducts business in this state. Further, on information and belief, GAIC, or its parent company, Great American Insurance Group, maintains a "San Francisco Region" office for Fidelity and Crime insurance claims (which this claim is) at 455 Market Street, Suite 1800, San Francisco, CA 94105.

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

# FACTUAL ALLEGATIONS

## I. *The GAIC Policy*

18.   On January 13, 2017, the Fidelity and Crime Division of GAIC issued Corporate Protection Policy Number GA 0134 to Quiksilver, Inc. with a policy period from January 15, 2017 to January 15, 2020.

19.   Boardriders incorporates the Policy by reference and *in haec verba*.[1]

20.   The Assured (commonly known as "Insured") under the Policy is "Quiksilver, Inc. and all majority owned and/or controlled entities." *See* Policy Underwriting Schedule.

21.   In March 2017, Quiksilver, Inc. changed its name to Boardriders, Inc. Thus, Boardriders is an Assured.

22.   In 2018, Billabong and the entities it owns became a subsidiary of Boardriders; their market value at the time of acquisition was less than 25% of Boardriders market value, making it an Assured for the rest of the policy period. *See* Policy § 3.11(i).

23.   The Policy's insuring agreement states in relevant part that "[i]n consideration of the payment of the required premium(s), and subject to the terms, limitations, conditions and exclusions set forth [in the policy], Underwriters agree to indemnify the Assured in respect of Insured Losses sustained directly because of

---

[1] GAIC asserts that the Policy, because of its nature and coverage of certain insured events, includes as a Condition that the Assured "must at all times use best efforts to ensure that knowledge of the existence of this insurance is restricted as far as possible" (Policy § 3.3) and public knowledge of the Policy would be dangerous for the Assured and its employees. For these reasons, Boardriders has not attached a copy of the Policy to the Complaint, but incorporates the Policy by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."); *Columbia Cas. Co. v. Cottage Health Sys.*, No. CV1503432 DDP (AGRx), 2015 WL 4497730, at *2 (C.D. Cal. July 17, 2015) ("[T]he complaint fundamentally relies on the policy, and it may therefore be incorporated into the complaint by reference.").

1    Insured Events which occur during the period of Insurance – all as defined in this

2    policy."

3        24.    The Policy defines "Insured Event" as:

4        [A] . . . Extortion . . . or a series of connected acts thereof. If

5        it is evident from the demand(s) or the making of such

6        demand(s) that . . . Extortions . . . are or were carried out in

7        furtherance one of another, they shall be deemed to be

8        connected and to constitute a single Insured Event.

9        Nevertheless, there shall be no liability hereunder in respect

10       of a series of . . . Extortions . . . the first of which began before

11       the Period of Insurance.

12   *See* Policy § 1.1.

13       25.    The Policy defines "Extortion" in relevant part as:

14       [T]he making of illegal threats either directly or indirectly to

15       the Assured or to an Insured Person to:

16       * * *

17       (iv) introduce any virus, worm, logic bomb or Trojan Horse

18       into the Assured's computer systems which indiscriminately

19       replicates itself and automatically disseminates itself causing

20       damage, destruction, erasure, alteration or corruption of

21       computerised data by persons who then demand a Ransom as

22       a condition of not carrying out such threats.

23   *See* Policy §1.3 as amended by Enhanced GAIC SCR Amendatory Endorsement

24   (v07.11).

25       26.    The Policy defines "Ransom" in relevant part as "cash and/or marketable

26   goods or services surrendered or to be surrendered by or on behalf of the Assured . . .

27   to meet a[n] . . . Extortion demand." *See* Policy §1.7.

28

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

6

27. Under the Policy, a computer attack on an Assured for which an "Extortion" occurs is an "Insured Event." *See* Policy § 1.1.

28. Section 2 of the Policy states in relevant part that:

INSURED LOSSES shall be

2.1 Ransom which has been surrendered . . . .

* * *

2.4 Additional expenses, being expenses necessarily incurred following, and for the duration of, an Insured Event by the Assured or an Insured Person(s) and which shall comprise:

(i) fees and expenses of an independent negotiator engaged by the Assured with the prior authorisation of Underwriters;

(ii) fees and expenses of an independent public relations consultant and/or product recall consultants and/or interpreter;

(iii) costs of travel and accommodation incurred by the Assured or an Insured Person;

* * *

(v) fees for independent psychiatric care and/or medical care and/or dental care and/or legal advice incurred prior to the release and within thirty-six months following the Insured Event;

* * *

(xi) the costs incurred by the Assured for the salaries of employees specifically designated to assist in negotiating on any Insured Event, not to exceed the employees base rate of pay. Plus all other reasonable expenses solely and directly incurred in connection with such negotiations, provided that

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

1    the Assured forwards an itemised account of such employees

2    time, services and expenses;

3    (xii) sums payable by way of interest on loans raised

4    specifically to meet an Insured Loss and in respect of amounts

5    subsequently reimbursed hereunder, provided the loan is

6    repaid within thirty days of the Assured receiving

7    reimbursement of the same from Underwriters;

8    (xiii) costs, fees and expenses of temporary security measures

9    solely and directly for the purpose of protecting Insured

10    Persons and/or Property located in the country where an

11    Insured Event has occurred whether or not such Insured Event

12    involves such Insured Persons and/or Property, and on the

13    specific recommendation of the Control Risks Group and/or

14    alternative Security Consultants.

15    * * *

16    (xv) reasonable fees and expenses of independent forensic

17    analysts engaged by the Assured;

18    * * *

19    (xix) All other reasonable expenses incurred by the Assured

20    or Insured Person(s) incurred as a direct result of an Insured

21    Event.

22    Policy § 2.4 & § 2.4 as amended by Enhanced GAIC SCR Amendatory Endorsement

23    (v07.11).

24    29.    The Limit of Liability applicable to Ransom is $10 million per Insured

25    Event.

26    30.    The Limit of Liability applicable to "Additional Expenses" as described in

27    section 2.4 of the Policy is an additional $10 million per Insured Event.

28

8

31.     The Policy contains a "Loss of Earnings Extension" that provides coverage for "Business Interruption Loss suffered by the Insured resulting from the necessary interruption of business caused directly and solely by a . . . Extortion . . . which necessarily results in an interruption of the Insured's business. The maximum Limit of Liability for all Business Interruption Loss will not exceed the limit stated in the schedule. The waiting period for all Business Interruption Loss will be as stated in the schedule. The indemnity period for all Business Interruption Loss will be as stated in the schedule." See Loss of Earnings Extension.

32.     "Business Interruption Loss" is defined as "the loss of Earnings, but not exceeding the actual reduction in Earnings, less charges and expenses which do not necessarily continue during the interruption of business, resulting from necessary interruption of business caused directly and solely by an Insured Event."

33.     The Limit of Liability set forth on the Policy Schedule as applicable to the Loss of Earnings Coverage for Business Interruption Loss is an additional $10 million. The Waiting Period identified on the Policy Schedule is 6 hours. The Indemnity Period identified on the Policy Schedule is 120 Days.

34.     The Policy has no aggregate limit, nor does any deductible or coinsurance apply to the coverages implicated by this claim.

35.     Boardriders paid all premiums due and the Policy was in full force and effect at all times during that relevant period.

**II. The Ransomware Attack**

36.     Boardriders adopts and incorporates by reference the allegations set forth above.

37.     On October 24, 2019, Boardriders learned that it had been the victim of a devastating ransomware attack impacting its global systems.

38.     The encryption substantially impacted Boardriders' business operations across regions and brands, affecting, among other things, (1) distribution and logistics

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

COMPLAINT

systems, including warehouse management systems; (2) retail store point-of-sale and back end systems; (3) business intelligence system; (4) the product lifecycle management system; (5) the interface management system; (6) the financial consolidation system; and (7) payroll systems.

39.     The threat actor made illegal threats to Boardriders that it would not restore access (or otherwise stop the corruption of Boardriders' data and systems) or unencrypt the data, unless 2,600 in bitcoin was paid, the equivalent at that time to approximately $25 million.

40.     Boardriders hired information technology professionals to try to restore network, data, and global systems from backups; rather than engaging in dialogue with the perpetrator, including negotiation or an express refusal to pay, that could result in retribution by the perpetrator.

41.     Boardriders' efforts to assess its ability to restore its computer system included, among other things, restoration activities, deployment of antivirus software and implementation of structure changes to its IT architecture to ensure that the perpetrator was locked out and could not re-infect the system.

42.     Boardriders incurred substantial expenses including, but not limited to, fees for services of security consultants, negotiators, incident response, and forensic investigation, and expenses billed by other vendors to help restore access and restore Boardriders' systems and business to its pre-attack level.

43.     Within about four months of the attack, by late February 2020, Boardriders had restored the vast majority of its systems, data, and network capabilities worldwide.

44.     The costs associated with the ransomware attack, forensic investigation, and business interruption resulted in significant losses to Boardriders.

45.     Boardriders incurred substantial business interruption loss as a direct result of the attack as various data and systems could not be adequately restored for weeks or even months and even when restored, connection and other issues persisted for some

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

COMPLAINT

time because of the scope of the systems, hardware, software, product channels, and regions impacted by the October 2019 ransomware attack. Systems were restored on a rolling basis to mitigate further business interruption loss.

46.    While the perpetrators had demanded a Ransom approximately $25 million to unlock its computer systems, Boardriders resumed operations for much less than that, incurring investigation and restoration-related expenses and business interruption losses.

47.    Under the Policy, the ransomware attack and associated extortion was discovered on or about October 24, 2019.

48.    The interruption to Boardriders' business lasted until approximately early February 2020 with respect to some channels and regions, that is, until all remaining systems were restored and business could return to normal operations. This timeframe is within the GAIC Policy's 120-day period of indemnity for Business Interruption Loss, which would have ended at the earliest, on February 21, 2020.

### III.   Boardriders' Ongoing Efforts to Secure Payment from GAIC and GAIC's Unreasonable and Willful Delay

49.    Boardriders adopts and incorporates by reference the allegations set forth above.

50.    On October 28, 2019, Boardriders provided prompt notice to Specialty Contingency Risks ("SCR"), the entity that GAIC had specified in the Policy to notify in the event of a claim, that Boardriders was in the midst of a massive RYUK[2] ransomware attack by which the vast majority of its global systems had been crippled and the company could not function normally worldwide.

---

[2] RYUK is a type of ransomware known for targeting large, public-entity Microsoft Windows cyber systems. It typically encrypts data of an infected system, rendering the data inaccessible until a ransom is paid in bitcoin.

COMPLAINT

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

51.     On October 31, 2019, at Boardriders' request, insurance broker Willis Towers Watson followed up with GAIC representative SCR, underscoring that time was of the essence "given the ongoing and devastating attack on the company."

52.     Later that day, GAIC's representative SCR responded that GAIC could not confirm coverage for any amounts, including a Ransom payment, and that Boardriders should maintain a detailed summary of its costs.

53.     On November 15, 2019, having heard nothing of substance from GAIC or its representative SCR, Boardriders again reached out, advising that it was retaining additional vendors to assist in the process and offering a call to discuss the ransomware attack and its impact. GAIC neither objected to the retention of the vendors nor requested a call or any other information.

54.     On December 10, 2019, GAIC representative SCR requested certain additional information about the extortion, but again failed to issue a reservation of rights or coverage position.

55.     Boardriders responded on December 13, 2019, advising that it was gathering the requested information. Boardriders provided a comprehensive response on December 18, 2019. GAIC did not provide any substantive response or coverage position.

56.     During the next few months, Boardriders dedicated substantial effort and resources trying to restore its systems from back-ups in hopes to fully or, at the very least, restore a significant portion of its systems without needing to pay the Ransom demanded by the perpetrator. Boardriders continued to consider the option of re-approaching the perpetrator at a later date in return for a decryption key for any still encrypted critical systems, should GAIC finally confirm coverage during that time and should a key be necessary. GAIC, however, did not confirm coverage.

57.     Eighteen weeks after the ransomware attack started, on March 2, 2020, GAIC requested more information, which largely was duplicative of information

12

previously provided. GAIC again failed to issue a reservation of rights or coverage position.

58.     On March 5, 2020, despite not having received a formal coverage position of any kind and to help move the claim forward, Boardriders submitted its first submission of covered losses under the GAIC Policy. The submission included costs and expenses related to investigation, remediation, and restoration of Boardriders' systems and all supporting invoices were provided at that time. Boardriders provided its partial Proof of Loss including supporting documentation; GAIC did not respond, did not issue a reservation of rights, and did not take a coverage position.

59.     On April 2, 2020, having heard nothing from GAIC in response to its March 5, 2020 partial Proof of Loss, Boardriders reached out to confirm receipt, offering a call to discuss any questions.

60.     On April 6, GAIC representative SCR advised that it would follow-up with GAIC and on April 20, 2020, advised that it had still not heard any response.

61.     Still having heard nothing from GAIC on Boardriders' March loss submission, on June 12, 2020, Boardriders provided to GAIC its second supplemental submission of covered restoration and remediation expenses covered under the Policy.

62.     On June 12, 2020, Boardriders also transmitted to GAIC its business interruption loss submission prepared by its retained forensic accounting firm, Crowe, as well as all related schedules and backup data. Boardriders notified GAIC that it was seeking legacy Billabong's losses from GAIC as primary coverage since Boardriders' cyber insurance policy, issued by another insurance carrier, expressly excluded coverage for Billabong.

### IV.  GAIC Finally Provides a Coverage Position

63.     Boardriders adopts and incorporates by reference the allegations set forth above.

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

64.     By letter dated June 26, 2020, some eight months after the ransomware attack and associated extortion demand started, GAIC finally provided its coverage positions leading with the patently unreasonable argument that its coverage was limited to a 2-day period in October 2019, and that it did not have to pay for any of the later investigation, restoration, or remediation work needed to determine whether a Ransom must be paid or whether a workaround was available. GAIC quibbled about individual expense items and requested additional documents, many of which had already been provided. GAIC also made incorrect statements about provisions in the Policy.

65.     On July 14, 2020, Boardriders responded to GAIC, pushing back on the reservation of rights letter and demanding payment of at least the undisputed amounts under the GAIC Policy.

66.     Finally, by letter dated July 21, 2020, nine months after the ransomware attack and extortion demand, GAIC having recognized that coverage was owed to Boardriders, offered to make an "advance payment" towards the Business Interruption Loss owed in response to Crowe's report detailing legacy Billabong's business interruption losses.

## V. *GAIC's Continued Unreasonable Delay and Bad Faith Conduct*

67.     Boardriders adopts and incorporates by reference the allegations set forth above.

68.     Unfortunately, GAIC's delay tactics and efforts to avoid paying coverage owed continued.

69.     In response to a letter from Boardriders, on September 4, 2020, GAIC again recognized coverage and promised, in writing, to make another partial payment to Boardriders. However, Boardriders was forced to follow-up with GAIC on September 25, 2020, October 5, 2020, October 9, 2020, and again on October 20, 2020 about status of the undisputed payment that had yet to be received.

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

COMPLAINT

70.     GAIC also continued to make unreasonable demands for more information from Boardriders – including demands for information that had already been provided to GAIC or its accountants at MDD Forensic Accounts ("MDD").

71.     GAIC's conduct would become a pattern where it would complain that it needed  information but then request information already provided or which had already been explained to be not reasonably accessible due the ransomware attack or corporate structure.

72.     For example, on September 29, 2020, Boardriders' accountants at Crowe again provided more information to GAIC's accountants at MDD, and Crowe followed-up with additional information on October 8, 2020. After hearing no response, Crowe followed up with GAIC's accountants at MDD on October 13, 2020 and November 10, 2020, asking that MDD provide its analysis, discuss any dispute over methodology or amounts submitted, or otherwise pay the entire, or at least portions of, the claim submitted by Boardriders. MDD did not respond or reach out to Crowe again until January 2021.

73.     Further, despite Crowe and Boardriders' requests, GAIC did not issue a competing forensic accounting report or business interruption loss calculations to Boardriders until July 16, 2020 – over 13 months after Boardriders had provided Crowe's forensic accounting report and business interruption loss calculations to GAIC.

74.     GAIC, further evidenced its bad faith conduct on December 14, 2020, by emailing Boardriders' counsel and threatening that if Boardriders did not accept a payment of an undisputed amount as final payment, that in any litigation, GAIC would (1) demand "far more" information from Boardriders; and (2) GAIC would assert as a defense to coverage the "lack of provision of requested information needed by GAIC to fully evaluate Boardriders' loss."

75.     On December 22, 2020, GAIC agreed to make another payment to Boardriders by December 23, 2020 and mediate over the still disputed amounts.

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

COMPLAINT

Boardriders' counsel made clear by email and call that Boardriders would not agree to any efforts by GAIC to re-allocate or recoup the undisputed amount that GAIC agreed to pay – which was still significantly less than the total amount of covered losses that GAIC owed under the Policy. Boardriders also made clear that such payment would be insufficient to resolve the claim.

### VI. GAIC Continues to Engage in Delay Tactics

76.     Boardriders adopts and incorporates by reference the allegations set forth above.

77.     On December 23, 2020, in response to GAIC's request, Boardriders again provided certain claim information about one of its insurers, including the coverage position and policy previously sent to GAIC on September 22, 2020.

78.     GAIC also stated, for the first time in the six-month history of the claim, and after making payments to Boardriders, that its accountants, MDD, had challenged the calculation of the business interruption/loss of earnings calculation, but refused to provide a competing report or explanation of the basis for the disagreement by MDD. Boardriders responded by suggesting that MDD respond to the October and November emails from Crowe and that any necessary calls be scheduled immediately. Boardriders made Crowe and Boardriders' senior executives available for questions by GAIC's accountants at MDD.

79.     Over the next few months, Boardriders continued to actively seek payment from GAIC, engaging in multiple conversations with GAIC and trying to schedule mediation.

80.     Nonetheless, on March 4, 2021, GAIC's counsel sent a letter to Boardriders requesting a laundry list of irrelevant information including "all communications" between Boardriders and its other insurers, as well as financial information, even though GAIC had already made some payments without this information and with no explanation for why GAIC now needed more information. In

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

any event, much of the information requested had already been provided to GAIC or its accountants, MDD.

81.   On April 9, 2021, Boardriders alerted GAIC that a previously scheduled meeting to discuss potential resolution needed to be postponed to allow it time to update its claim package to include some previously unclaimed retail locations, as well as other adjustments in response to some of MDD's points.

82.   On April 14, 2021, GAIC's counsel wrote Boardriders demanding information previously provided to it and reiterating information requests sent in March, although the meeting to discuss potential resolution had been postponed and that GAIC had failed to explain why more information was now necessary.

83.   On that same day, Boardriders' counsel wrote GAIC to confirm Boardriders would send its updated claims package by the end of the week. Boardriders also provided a detailed spreadsheet to GAIC on April 14, 2021, addressing all document requests set forth in GAIC's March letter, including an explanation of whether responsive information was previously provided or whether it was being provided therewith for the first time. Boardriders provided a sharefile link to GAIC for it to download all responsive documentation, notwithstanding that many requests were unreasonable or overbroad. The link included information previously provided as well as new information requested by GAIC.

84.   On May 7, 2021, GAIC sent another harassing letter requesting a laundry list of information without explanation – much of which was previously provided – and unilaterally setting deadlines for Boardriders to provide additional documents.

## VII.  *Boardriders Sends GAIC a Revised Claim*

85.   Boardriders adopts and incorporates by reference the allegations set forth above.

86.   On May 21, 2021, Boardriders sent a revised business interruption claim to GAIC. Boardriders' accountant, Crowe, sent a link to GAIC with all supporting

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

17

documentation, much of which GAIC already had, so GAIC would have all of Boardriders' supporting documentation in one place.

87. On June 11, 2021, however, GAIC sent another harassing letter with a laundry list of information requests to Boardriders. GAIC, again, requested many documents already provided, as well as documents that were not reasonably accessible (or document lost because of the ransomware attack), as well as other irrelevant documents.

88. On June 11, 2021, Boardriders responded to GAIC's request by stating that all underlying financial data had been included in the sharefile links Crowe had circulated before to GAIC's counsel and accountant. On June 15, 2021, Boardriders' counsel confirmed for GAIC that all source documentation relied on for the Boardriders' claims was produced to GAIC and GAIC's accountants and additional supplemental information would be uploaded to a sharefile site that same week, which it was.

89. Since that time, GAIC has continued to engage in bad faith conduct, including by unreasonably demanding unnecessary information; refusing to pay any additional amounts due since December 2020; by postponing discussion for potential resolution and thus further delaying payment owed to Boardriders; and by demanding reimbursement from Boardriders for amounts previously paid, despite no right in the Policy or otherwise permitting it to do so.

## VIII.  Compliance with All Conditions Precedent

90. Boardriders adopts and incorporates by reference the allegations set forth above.

91. Boardriders has satisfied all applicable terms, conditions, and other requirements under the Policy. Alternatively, compliance with the applicable terms, conditions, and other requirements, in whole or in part, have been waived or compliance

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

is unnecessary for other reasons, including GAIC's actions and inactions related to its handling of Boardriders' claim and GAIC's breach of the Policy.

92.     In the nearly twenty-one months since the ransomware attack, Boardriders has actively sought payment from GAIC under the Policy for its ransomware claim. Boardriders has provided thousands of pages of documents, including independent forensic accounting reports and financials, in support of this claim, as well as spent countless hours on phone calls and interviews with Boardriders' accountants, Chief Information Security Officer, and other executives.

93.     GAIC's belated and unreasonable laundry-list requests for information over the last months establish GAIC's egregious bad faith conduct. Either GAIC paid some of Boardriders' losses without "necessary" documents or information and thus failed to thoroughly investigate Boardriders' losses as required by California law at the outset; or GAIC already had all reasonably necessary information when it paid some of Boardriders' losses in December 2020 and declared that no more amounts were owed, which makes these requests unnecessary and unreasonable, designed only to keep prejudicing its insured by forcing it to incur significant attorney's fees and the fees of its forensic accountants to respond to these unreasonable and harassing follow-up requests.

94.     Well-established California law makes it clear that an insurer must place its insured's interests above its own. This duty requires that the insurer investigates a claim and thoroughly inquires into all of the possible bases for coverage on an insured's claim.

95.     The insurer must (1) promptly respond to claims communications; (2) it must accept or deny coverage within a reasonable time after submission of its insured's loss submissions; (3) it must provide a reasonable explanation of its reasons for not providing a coverage position and reasons for denying coverage; (4) it must not delay the investigation or payment of the claim by requiring submissions of the same

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

information; (5) it must promptly provide a reasonable explanation for any compromise payment; (6) it must not misrepresent relevant facts or insurance policy provisions relating to any coverage at issue; (7) it must communicate with its insured within the timelines specified in the California Code of Regulations; and (8) it must not require the insured to file suit to recover amounts due under the policy by offering substantially less than the amount actually owed. GAIC has violated all these tenants of California law and has acted in bad faith.

**FIRST CAUSE OF ACTION**

**<u>BREACH OF CONTRACT</u>**

96.    Boardriders adopts and incorporates by reference the allegations set forth above.

97.    GAIC is required to pay all of the submitted expenses that Boardriders incurred in responding to the Ransomware attack.

98.    GAIC is required to reimburse Boardriders for all of the Business Income Loss it incurred as a result of the Ransomware attack, within the 120-day indemnity period, subject to any offsets and credits for amounts paid by other insurers.

99.    GAIC has refused to pay any further amounts due and wrongly denies coverage for amounts owed.

100.    Boardriders has satisfied all of the applicable terms, conditions, and other requirements of the GAIC Policy; and, alternatively, compliance with the applicable terms, conditions, and other requirements, in whole or in part has been waived or compliance is unnecessary for other reasons.

WHEREFORE, Boardriders demands judgment against GAIC for damages in an amount to be proven at trial, prejudgment and post-judgment interest, costs, or other harm incurred by Boardriders because of GAIC's conduct, and all appropriate supplemental relief and any other relief that the Court deems proper.

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

## SECOND CAUSE OF ACTION
## __DECLARATORY RELIEF__

101.   Boardriders adopts and incorporates by reference the allegations set forth above.

102.   An actual controversy exists between the parties about whether GAIC breached its duties under the GAIC Policy to reimburse Boardriders for expense incurred in responding to the Ransomware attack.

103.   An actual controversy exists between the parties about whether GAIC breached its duties under the GAIC Policy to reimburse Boardriders for business interruption loss caused by the Ransomware attack.

104.   An actual controversy exists between the parties as to the duration of the Insured Event and the period for which Boardriders is entitled to reimbursement.

105.   An actual controversy exists between the parties about whether GAIC's delay in responding to the notice and proofs of loss caused GAIC to waive all other defenses.

106.   Based on GAIC's conduct, Boardriders expects GAIC will continue to breach its obligations under the GAIC Policy.

107.   A declaratory judgment is necessary and proper, will serve a useful purpose, and will clarify the legal rights of the parties.

108.   Additionally, a declaratory judgment will afford relief from uncertainty, insecurity, and controversy about the parties' relationship and any outstanding obligations related to that relationship.

109.   This Court is thus vested with the power to declare and adjudicate the rights of the parties with reference to the issues raised in this Complaint under 28 U.S.C. § 2201, *et seq*.

WHEREFORE, Boardriders seeks a declaration that:

COMPLAINT

a)     The Ransomware attack and associated Extortion is an Insured Event under the GAIC Policy;

b)     The Ransomware attack and associated Extortion is an Insured Event under the GAIC Policy;

c)     The Insured Event started on October 24, 2019 and the period of indemnity extends at least until February 21, 2020;

d)     GAIC breached its duties under the GAIC Policy to reimburse Boardriders for expense incurred in responding to the Ransom attack;

e)     GAIC breached its duties under the GAIC Policy to reimburse Boardriders for business interruption loss caused by the Ransom attack;

f)     GAIC has waived all coverage defenses, except coverage for punitive damages directly assessed against Boardriders.

g)     GAIC breached the Policy by not making a full and complete payment to Boardriders for expense that it incurred in responding to the ransomware attack;

h)     GAIC is obligated to pay all expense that Boardriders incurred in responding to the ransomware attack;

i)     GAIC breached the GAIC Policy by not making a full and complete payment to Boardriders for business interruption loss that it sustained because of the ransomware attack;

j)     GAIC is obligated to pay Boardriders all business interruption loss that it sustained because of the ransomware attack; and

k)     GAIC has waived all coverage defenses, except coverage for punitive damages directly assessed against Boardriders.

### THIRD CAUSE OF ACTION

### <u>BAD FAITH</u>

110.   Boardriders adopts and incorporates by reference the allegations set forth above.

**Hunton Andrews Kurth LLP**
**550 S. Hope Street, Suite 2000**
**Los Angeles, California 90071**

111.   GAIC has failed to promptly respond to Boardriders' communications since the inception of the ransomware claim and has failed to thoroughly or promptly investigate the claim.

112.   GAIC has continuously engaged in delay tactics, including, but not limited to, failing to timely respond to Boardriders' communications and loss submissions, repeatedly submitting additional requests for information it was already provided and continually requesting irrelevant information about the claims handling of Boardriders' other insurers.

113.   GAIC has also misrepresented key facts and policy terms.

114.   GAIC has also sought to condition payment of undisputed amounts owed on a full release, even threatening its insured that GAIC would make excessive information requests on Boardriders should Boardriders file suit.

115.   Under the GAIC Policy and California law, GAIC owed Boardriders a duty to act in good faith, including, but not limited to:

a)   Conduct a meaningful, thorough and fair investigation of the claim including a full and timely investigation into all the basis for the claim;

b)   Properly respond to communications from the policyholder;

c)   Not misrepresent key facts or policy terms;

d)   Process and pay claims in a prompt manner;

e)   Not withhold payment of the claim from its insured; and

f)   Give as much consideration to the insured's interests as its own.

116.   GAIC has not complied with these obligations and has violated applicable sections of the California Insurance Code section 790.03(h) in that:

a)   GAIC failed to acknowledge and act reasonably and promptly after receiving communications about Boardriders' claim, CACI No. 2337(a);

b)   GAIC failed to acknowledge receipt of, let alone accept or deny coverage, within a reasonable time after Boardriders completed and submitted its partial proof of

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

loss of IT costs in March 2020, as well as Boardriders' other loss submissions in June 2020 and May 2021, CACI No. 2337(d);

c)      GAIC failed to provide a reasonable explanation of its reasons for not providing a coverage position or any reasons for denying coverage or for compromise amounts, see CACI No. 2337(m);

d)      GAIC requested the same information previously provided to it, while refusing the policyholder's request for calls to provide any needed information about the claim, see CACI No. 2337(k); and

e)      GAIC misrepresented relevant facts in repeatedly demanding the same information previously provided to it and GAIC misrepresented relevant policy provisions in its arguments regarding the period of time for which business interruption loss is covered and the Policy's coverage for Expenses.

117.   These duties are fiduciary in nature and non-delegable.

118.   GAIC has likewise failed to act promptly in communicating with Boardriders and has failed to follow the timelines set forth in the California Code of Regulations, title 10, § 2695.7(b)–(e).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Boardriders demands judgment against GAIC as follows:

(1)      A declaration from the Court that:

(a)      Each of the coverage provisions identified herein is triggered by Boardriders' claim;

(b)      No exclusion under the Policy applies to bar or limit coverage for Boardriders' claim;

(c)      The Policy covers Boardriders' claim;

(d)      GAIC breached the implied covenant of good faith and fair dealing;

(e)      GAIC violated the California Code of Regulations, title 10, § 2695.7(b), (d), and (e); and

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

COMPLAINT

Hunton Andrews Kurth LLP
550 S. Hope Street, Suite 2000
Los Angeles, California 90071

(f)     Any other declaratory relief that would be useful to the resolution of the dispute between the parties.

(2)     For special and consequential damages against GAIC in an amount to be proven at trial, in excess of $75,000.00.

(3)     For punitive and exemplary damages as provided by law.

(4)     Pre- and post-judgment interest as provided by law.

(5)     An award of attorneys' fees and costs of suit incurred.

(6)     For such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Boardriders demands trial by jury on all issues so triable.

DATED:  July 26, 2021            **HUNTON ANDREWS KURTH LLP**

By:   */s/  Phillip J. Eskenazi*
PHILLIP J. ESKENAZI
(State Bar No. 158976)
550 South Hope Street, Suite 2000
Los Angeles, California 90071
Telephone: 213 • 532 • 2000
Facsimile: 213 • 532 • 2020
peskenazi@HuntonAK.com

SCOTT P. DEVRIES
(State Bar No. 88221)
50 California Street, Suite 1700
San Francisco, California 94111
Telephone: 415 • 975 • 3700
Facsimile: 415 • 975 • 3701
sdevries@HuntonAK.com

*[Counsel continued on next page]*

COMPLAINT

WALTER J. ANDREWS
(*pro hac vice forthcoming*)
ANDREA DEFIELD
(*pro hac vice forthcoming*)
Wells Fargo Center
333 S.E. 2nd Avenue, Suite 2400
Miami, Florida 33131
Telephone: 305 • 810 • 2500
Facsimile: 305 • 810 • 2460
adefield@HuntonAK.com
wandrews@HuntonAK.com

LATOSHA M. ELLIS
(*pro hac vice forthcoming*)
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037
Telephone: 202 • 955 • 1500
Facsimile: 202 • 778 • 2201
lellis@HuntonAK.com

***Attorneys for Plaintiff***
***BOARDRIDERS, INC.***

**Hunton Andrews Kurth LLP**
**550 S. Hope Street, Suite 2000**
**Los Angeles, California 90071**

COMPLAINT