| | |
|---|---|
| 1 | Scott P. Devries (State Bar No. 88221) |
| 2 | sdevries@HuntonAK.com<br>**HUNTON ANDREWS KURTH LLP** |
| 3 | 50 California Street, Suite 1700 |
| 4 | San Francisco, California 94111<br>Telephone:  415 • 975 • 3700 |
| 5 | Facsimile:  415 • 975 • 3701 |
| 6 | |
| 7 | Phillip J. Eskenazi (State Bar No. 158976) |
| 8 | peskenazi@HuntonAK.com<br>**HUNTON ANDREWS KURTH LLP** |
| 9 | 550 South Hope Street, Suite 2000 |
| 10 | Los Angeles, California 90071<br>Telephone:  213 • 532 • 2000 |
| 11 | Facsimile:  213 • 532 • 2020 |
| 12 | [Additional Counsel Listed on Signature Page] |
| 13 | |
| 14 | Attorneys for Plaintiff/Counter-Defendant |
| 15 | BOARDRIDERS, INC. |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| BOARDRIDERS, INC.,<br><br>   Plaintiff/Counter-Defendant,<br><br>   v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br><br>   Defendant/Counter-Claimant. | Case No.:  8:21-cv-01260-JLS-JDE<br><br>**ANSWER AND AFFIRMATIVE DEFENSES TO GREAT AMERICAN INSURANCE COMPANY'S COUNTERCLAIMS TO COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge:   Hon. Josephine L. Staton<br><br>Complaint filed: July 26, 2021 |

Plaintiff/Counter-Defendant Boardriders, Inc. ("Boardriders"), by counsel, states as follows for its Answer to Defendant/Counter-Claimant Great American Insurance Company's ("GAIC") Counterclaim:

## INTRODUCTION/NATURE OF THE ACTION

1. Boardriders admits that GAIC alleges in Paragraph 1 of the Counterclaim that it seeks a declaration concerning the rights and obligations of the parties under an insurance policy GAIC issued to Quiksilver, Inc., n/k/a Boardriders, for the January 15, 2017 to January 15, 2020 policy period ("Policy"). Boardriders admits that GAIC has made some payments to Boardriders in connection with an October 2019 cyber-attack ("Cyber Incident"), Boardriders denies the remaining allegations in Paragraph 1 and further avers that the payments made are for an amount less than Boardriders' submitted and covered losses.

2. Boardriders admits that GAIC alleges in Paragraph 2 of the Counterclaim that GAIC seeks a declaration from the Court. Boardriders denies the remaining allegations in Paragraph 2.

3. Boardriders admits that it seeks coverage under the Policy for, among other things, Business Interruption Loss ("BI Loss") it sustained after the Cyber Incident encrypted the majority of its computer systems worldwide. Boardriders admits that GAIC made partial payments to Boardriders for Boardriders' claimed BI Loss. Boardriders denies the remaining allegations in Paragraph 3, including, but not limited to specifically denying that GAIC made those payments subject to a right to seek recoupment of those payments or that GAIC had any such right to seek recoupment of amounts paid.

4. Boardriders denies the allegations in Paragraph 4.

5. Boardriders denies the allegations in Paragraph 5.

6. Boardriders denies the allegations in Paragraph 6.

7. Boardriders denies the allegations in Paragraph 7.

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

# THE PARTIES

8. Boardriders admits the allegations in Paragraph 8.

9. Boardriders admits the allegations in Paragraph 9.

# JURISDICTION AND VENUE

10. Boardriders admits the allegations in Paragraph 10.

11. Boardriders admits the allegations in Paragraph 11.

# FACTUAL BACKGROUND

**A. The Cyber Incident**

12. Boardriders admits the allegations in Paragraph 12.

13. Boardriders admits only that it discovered a message demanding 2,600 bitcoin (approximately $25 million at the time) in exchange for decryption keys. Boardriders denies the remaining allegations in Paragraph 13.

14. The allegations in Paragraph 14 of the Counterclaim discuss confidential information that should not be in a publicly-filed pleading. On that ground, and to preserve confidentiality, Boardriders denies the allegations in Paragraph 14.

15. Boardriders admits that, as a result of the Cyber Incident, it sustained substantial losses, including millions of dollars in BI Loss for the "Legacy Billabong" division of the company; millions of dollars in BI Loss for the "Legacy Boardriders" division of the company; and millions of dollars in fees and expenses of Boardriders' retained security and information technology consultants and vendors, costs to rebuild and recreate data and replace impacted hardware, and other related "Additional Expenses" arising out of the Cyber Incident ("IT Costs"). The remaining allegations in Paragraph 15 are denied. Boardriders further asserts that GAIC's footnote 1 is not a factual allegation and thus requires no response, however to the extent it does, it is denied.

### B. The Policy

16. Boardriders admits the allegations in Paragraph 16. The footnote associated with Paragraph 16 does not contain factual allegations for which a response is necessary, however to the extent it does, those are denied.

17. The allegations in Paragraph 17 of the Counterclaim purport to characterize the terms of the Policy, which is the best evidence of its content. Boardriders denies the remaining allegations and characterizations in Paragraph 17.

18. The allegations in Paragraph 18 of the Counterclaim purport to characterize the terms of the Policy, which is the best evidence of its content. Boardriders denies the remaining allegations and characterizations in Paragraph 18.

19. The allegations in Paragraph 19 of the Counterclaim purport to characterize the terms of the Policy, which is the best evidence of its content. Boardriders denies the remaining allegations and characterizations in Paragraph 19.

20. The allegations in Paragraph 20 of the Counterclaim purport to characterize the terms of the Policy, which is the best evidence of its content. Boardriders denies the remaining allegations and characterizations in Paragraph 20.

21. The allegations in Paragraph 21 of the Counterclaim purport to characterize the terms of the Policy, which is the best evidence of its content. Boardriders denies the remaining allegations and characterizations in Paragraph 21, including GAIC's characterization of the policy language.

22. The allegations in Paragraph 22 of the Counterclaim purport to characterize the terms of the Policy, which is the best evidence of its content. Boardriders denies the remaining allegations, including GAIC's characterization of the policy language.

23. The allegations in Paragraph 23 of the Counterclaim purport to characterize the terms of the Policy, which is the best evidence of its content.

Boardriders denies the remaining allegations in Paragraph 23, including GAIC's characterization of the policy language.

### C. Boardriders Gives Notice of the Cyber Incident and Ensuing Communications Between Boardriders and GAIC

24. Boardriders admits that it provided notice of the ransomware attack to its cyber insurer, AIG, on October 24, 2019. The remaining allegations in Paragraph 24 of the Counterclaim discuss confidential information that should not be in a publicly-filed pleading. On that ground, and to preserve confidentiality, Boardriders denies the remaining allegations in Paragraph 24.

25. Boardriders admits that on or around October 28, 2019, Boardriders, through Specialty Contingency Risks, Inc. ("SCR"), provided notification of the Cyber Incident to GAIC. Boardriders denies the remaining allegations in Paragraph 25.

26. Boardriders denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Counterclaim. Answering further, Boardriders avers that neither GAIC nor SCR provided a response to Boardriders' notice until October 31, 2020.

27. Boardriders admits the allegations in Paragraph 27. Answering further, Boardriders avers that due to GAIC's failure to respond for several days to Boardriders' notice and requests for a response, Boardriders had retained other vendors to assist it.

28. Boardriders denies the allegations in Paragraph 28.

29. Boardriders admits that from October 2019 until June 2020, GAIC communicated with Boardriders through SCR. Boardriders denies the remaining allegations in Paragraph 29, including any characterization that SCR or GAIC were responsive during this time.

30. Boardriders denies the allegations in Paragraph 30.

31. Boardriders denies the allegations in Paragraph 31.

32. Boardriders denies the allegations in Paragraph 32. Answering further, Boardriders provided its first partial proof of loss, consisting of expenses incurred from the Cyber Incident and all supporting documentation to SCR on March 5, 2020, not "early April 2020" and advised that it was still reconciling all invoices that had to be paid and reserved its right to supplement the proof of loss when additional costs or expenses became known or invoiced. Boardriders denies the remaining allegations in Paragraph 32.

33. Boardriders denies the allegations in Paragraph 33.

34. Boardriders denies the allegations in Paragraph 34.

**D.  Boardriders Engages Coverage Counsel and Eventually Submits a BI Loss Claim, for Which GAIC Issued a Coverage Opinion and Made Substantial Payments**

35. Boardriders admits that on June 12, 2020, coverage counsel sent Boardriders' BI Loss claim to GAIC via SCR, which was created by an independent forensic accounting firm, Crowe. Boardriders admits that it submitted an additional $1.1 million in expenses to supplement its earlier partial proof of loss for such expenses. Boardriders denies the remaining allegations in Paragraph 35.

36. Boardriders admits that it sent a letter to GAIC on June 12, 2020. That letter speaks for itself and is the best evidence of its content. Boardriders denies the remaining allegations and characterizations in Paragraph 36.

37. The allegations in Paragraph 37 of the Counterclaim purports to characterize the content of Boardriders' June 12, 2020 letter to GAIC, which is the best evidence of its content. Boardriders denies the allegations and characterizations in Paragraph 37.

38. The allegations in Paragraph 38 of the Counterclaim purports to characterize the content of Boardriders' June 12, 2020 letter to GAIC, which is the best

evidence of its content. Boardriders denies the allegations and characterizations in Paragraph 38.

39. The allegations in Paragraph 39 of the Counterclaim purports to characterize the content of GAIC's June 26, 2020 letter to Boardriders, which is the best evidence of its content. Boardriders denies the allegations and characterizations in Paragraph 39.

40. The allegations in Paragraph 40 of the Counterclaim purports to characterize the content of a series of letters Boardriders sent to GAIC over several months, which are the best evidence of its content. Boardriders denies the allegations and characterizations in Paragraph 40.

41. Boardriders admits that the BI Loss involves multiple divisions of Boardriders, worldwide operations, and multiple channels of distribution (wholesale, retail, e-commerce). Boardriders denies the remaining allegations and characterizations in Paragraph 41.

42. Boardriders denies the allegations in Paragraph 42.

43. Boardriders admits that GAIC paid $2 million in July 2020 and an additional $500,000 in early September 2020 plus another payment of $175,542.26 for IT Costs, out of the over $13 million owed by GAIC for BI Loss under its Policy based on Boardriders submissions in March 2020 and June 2020. Boardriders admits that GAIC reserved the right to pursue claims against any other insurer that was also responsible for the losses in issue. Boardriders denies the remaining allegations in Paragraph 43.

44. Boardriders admits that on December 23, 2020, GAIC made another payment of $3.1 million of undisputed covered loss that was owed under the Policy. Boardriders denies the remaining allegations in Paragraph 44 and specifically denies that the payment was made subject to a right to recoupment, rather Boardriders, through counsel, expressly rejected any condition that the payment be made subject to a right to

1  recoupment. GAIC issued the payment after accepting Boardriders' rejection of GAIC's
2  attempt to reserve its right as to recoupment of any part of that or any other payment.

3       45.    Boardriders admits the allegations in Paragraph 45 that GAIC has paid
4  $5.6 million of the $10 million covered BI Loss and $175,542.26 of IT Costs incurred
5  by Boardriders as a result of the Extortion.

6       **E.**    **Boardriders Has Failed to Demonstrate its BI Loss is Covered**

7       46.    Boardriders admits the allegations in Paragraph 46 that upon GAIC's
8  request, it has sought coverage for a portion of the BI Loss (unpaid by GAIC) from
9  AIG, however Boardriders has reserved the right to require that GAIC pay those losses,
10 which are covered under the Policy, should AIG not pay.

11      47.    Boardriders admits that it repeatedly provided data and information to
12 GAIC's duplicative requests for information that GAIC claimed was necessary to
13 evaluate Boardriders' claim and that to date, Boardriders has provided several hundred,
14 if not thousands of pages, of supporting data including detailed independent forensic
15 accounting reports, as well as participated on countless calls with GAIC and its
16 representatives. Boardriders denies the remaining allegations in Paragraph 47.

17      48.    Boardriders admits that on May 21, 2021, it submitted a revised BI Loss
18 claim, increasing its total claimed business interruption losses by over $1.4 million in
19 response to questions raised by GAIC's accountants about the scope of losses and the
20 number of stores implicated. With that submission, Boardriders' independent forensic
21 accountants provided an extremely detailed report explaining the reasons for the
22 increase, the methodology, and all available supporting information. Boardriders denies
23 the remaining allegations in Paragraph 48.

24      49.    Boardriders denies the allegations in Paragraph 49.

25      50.    The allegations in Paragraph 50 of the Counterclaim purports to
26 characterize correspondence GAIC sent to Boardriders on September 24, 2021, which

27
28

*Left margin:* Hunton Andrews Kurth LLP / 50 California Street, Suite 1700 / San Francisco, California 94111

was another harassing and unreasonable letter, which is the best evidence of its content. Boardriders denies the allegations and characterizations in Paragraph 50.

51.  Boardriders denies the allegations in Paragraph 51.

52.  Boardriders denies the allegations in Paragraph 52.

53.  Boardriders admits the footnote stating that it organizes its financial reporting by three revenue streams, or "channels" – Retail, Wholesale, and Ecommerce, grouped into three major geographic regions – AMS (North, South, and Central America), EMEA (Europe, Middle East, and Africa), and APAC (Asia-Pacific, including Australia and New Zealand). Boardriders denies the remaining allegations and characterizations in Paragraph 53.

54.  Boardriders denies the allegations and characterizations in Paragraph 54.

55.  Boardriders denies the allegations and characterizations in Paragraph 55 and states that it is without knowledge to adequately respond to the numerous subparts of this paragraph and the many footnotes linking to external sources.

56.  Paragraph 56 includes an allegation that states a legal conclusion for which no response is required. To the extent a response is required, Boardriders denies that and the remaining allegations and characterizations in Paragraph 56.

57.  Boardriders denies the allegations and characterizations in Paragraph 57.

58.  Boardriders denies the allegations and characterizations in Paragraph 58.

## COUNT I
### (DECLARATORY RELIEF – NO BUSINESS INTERRUPTION LOSS)

59.  Boardriders incorporates its responses to the allegations in Paragraphs 1 through 58 of the Counterclaim as if the same had been fully set forth herein at length.

60.  Boardriders admits the allegations in Paragraph 60. Answering further, Boardriders refers the Court to the Policy itself, which is the best evidence of the terms and conditions of the Policy.

61. The allegation in Paragraph 61 states a legal conclusion for which no response is required. To the extent a further response is required, Boardriders denies the allegations in Paragraph 61.

62. Boardriders denies the allegations in Paragraph 62.

63. Boardriders denies the allegations in Paragraph 63.

64. Boardriders denies the allegations in Paragraph 64.

65. Boardriders admits the allegations in Paragraph 65.

66. Boardriders denies the allegations in Paragraph 66.

## COUNT II

## (DECLARATORY RELIEF – BILLABONG NOT AN ASSURED)

67. Boardriders incorporates its responses to the allegations in Paragraphs 1 through 66 of the Counterclaim as if the same had been fully set forth herein at length.

68. Boardriders admits the allegations in Paragraph 68. Answering further, Boardriders refers the Court to the Policy itself, which is the best evidence of the terms and conditions of the Policy.

69. The allegation in Paragraph 69 states a legal conclusion for which no response is required. To the extent a further response is required, Boardriders denies the allegations in Paragraph 69.

70. Boardriders denies the allegations in Paragraph 70.

71. Boardriders denies the allegations in Paragraph 71.

72. Boardriders denies the allegations in Paragraph 72.

73. Boardriders admits the allegations in Paragraph 73.

74. Boardriders denies the allegations in Paragraph 74.

## COUNT III

## (REIMBURSEMENT)

75. Boardriders incorporates its responses to the allegations in Paragraphs 1 through 74 as though fully set forth herein at length.

ANSWER AND AFFIRMATIVE DEFENSES TO GREAT AMERICAN INSURANCE COMPANY'S
COUNTERCLAIMS TO COMPLAINT

76. Boardriders admits that GAIC has paid millions of dollars to Boardriders under the Policy as reimbursement for its claimed and covered BI Loss arising from the Cyber Incident out of the over $10 million covered and claimed BI Loss owed under the Policy. Boardriders denies the remaining allegations in Paragraph 76.

77. Boardriders admits that GAIC's payments included a $3.1 million payment of undisputed loss owed on December 23, 2020. Boardriders expressly denies the remaining allegations and characterizations in Paragraph 77.

78. Boardriders denies the allegations in Paragraph 78.

79. Boardriders denies the allegations in Paragraph 79.

## PRAYER FOR RELIEF

80. Boardriders further denies all alleged damages in the WHEREFORE clause of the Counterclaim.

## AFFIRMATIVE DEFENSES

Boardriders asserts the following affirmative and other defenses. In asserting these defenses, Boardriders does not assume the burden of proof related to any issue as to which the applicable law would otherwise place with GAIC or any other party.

## FIRST AFFIRMATIVE DEFENSE

GAIC has waived and/or is estopped from seeking reimbursement or recoupment of the covered loss paid by GAIC because (1) GAIC has no such right in the Policy or at common law; and (2) Boardriders asserted in writing that it would not accept payments subject to any right to recoupment, yet GAIC still issued payment after recognition of Boardriders' refusal to agree to any purported right to recoupment.

## SECOND AFFIRMATIVE DEFENSE

GAIC is barred from denying coverage for the Cyber Incident and/or seeking reimbursement or recoupment, based on the doctrine of laches, because GAIC's unreasonable delay in responding to Boardriders' requests for coverage and delay in issuing payment for covered loss has prejudiced Boardriders.

**THIRD AFFIRMATIVE DEFENSE**

GAIC is barred from denying coverage for the Cyber Incident and/or seeking reimbursement or recoupment, based on the doctrine of accord and satisfaction, because Boardriders asserted in writing that it would not accept payment subject to any right to recoupment, and that GAIC's payment represented payment for undisputed covered loss that was owed. Yet, GAIC still issued payment after recognition of Boardriders' refusal to agree to any purported right to recoupment.

**FOURTH AFFIRMATIVE DEFENSE**

GAIC has materially breached its obligations under the Policy by refusing to honor its obligation to provide coverage for Boardriders' total covered loss.

**FIFTH AFFIRMATIVE DEFENSE**

GAIC's claims are barred, in whole or in part, because at all times material to this suit, SCR intended to be and was the agent for GAIC and GAIC intended SCR to be its agent, as set forth in the policy documents, such that GAIC is bound by SCR's actions, conduct, and communications with respect to Boardriders' claim.

**SIXTH AFFIRMATIVE DEFENSE**

GAIC is barred from denying coverage for the Cyber Incident and/or seeking reimbursement or recoupment because GAIC acted in bad faith, breaching the implied covenant of good faith and fair dealing with its unreasonable delay in responding to Boardriders' requests for coverage and conscious and deliberate delay in issuing payment for Boardriders' covered loss.

**SEVENTH AFFIRMATIVE DEFENSE**

GAIC is barred from denying coverage for the Cyber Incident and/or seeking recoupment because it has not complied with and has thus violated California Insurance Code sections 790.03(h) in that it (1) failed to acknowledge and act reasonably and promptly after receiving communications about Boardriders' claim (CACI No. 2337(a)); (2) failed to acknowledge receipt of and accept or deny coverage within a

reasonable time after receipt of Boardriders' proof of loss (CACI No. 2337(d)); (3) repeatedly requested the same information previously provided to it (CACI No. 2337(k)); and (4) failed to provide a reasonable explanation of its reasons for not providing a coverage position or any reasons for denying coverage or for compromise amounts (CACI No. 2337(m)).

### EIGHTH AFFIRMATIVE DEFENSE

GAIC is barred from denying coverage for the Cyber Incident and/or seeking recoupment because it failed to act promptly in communication with Boardriders and has failed to follow the timelines set forth in the California Code of Regulations, Title 10, § 2695.7(b)-(e).

### NINTH AFFIRMATIVE DEFENSE

GAIC is barred from seeking reimbursement or recoupment from Boardriders because the terms and conditions of the Policy do not entitle GAIC to such relief.

### TENTH AFFIRMATIVE DEFENSE

GAIC's claims are barred, in whole or in part, because of GAIC's failure to preserve Boardriders' confidential information related to the Cyber Incident.

| | | |
|---|---|---|
| 1 | Dated: October 18, 2021 | HUNTON ANDREWS KURTH LLP |
| 2 | | By: /s/ *Scott P. Devries* |
| | | Scott P. Devries |
| | | (State Bar No. 88221) |
| | | 50 California Street, Suite 1700 |
| | | San Francisco, California 94111 |
| | | Telephone: 415 • 975 • 3700 |
| | | Facsimile: 415 • 975 • 3701 |
| | | sdevries@HuntonAK.com |
| | | |
| | | Phillip J. Eskenazi |
| | | (State Bar No. 158976) |
| | | 550 South Hope Street, Suite 2000 |
| | | Los Angeles, California 90071 |
| | | Telephone: 213 • 532 • 2000 |
| | | Facsimile: 213 • 532 • 2020 |
| | | peskenazi@HuntonAK.com |
| | | |
| | | Walter J. Andrews |
| | | *(admitted pro hac vice)* |
| | | ANDREA DEFIELD |
| | | *(admitted pro hac vice)* |
| | | Wells Fargo Center |
| | | 333 S.E. 2nd Avenue, Suite 2400 |
| | | Miami, Florida 33131 |
| | | Telephone: 305 • 810 • 2500 |
| | | Facsimile: 305 • 810 • 2460 |
| | | adefield@HuntonAK.com |
| | | wandrews@HuntonAK.com |
| | | |
| | | Latosha M. Ellis |
| | | *(admitted pro hac vice)* |
| | | 2200 Pennsylvania Avenue, N.W. |
| | | Washington, DC 20037 |
| | | Telephone: 202 • 955 • 1500 |
| | | Facsimile: 202 • 778 • 2201 |
| | | lellis@HuntonAK.com |
| | | |
| | | Attorneys for Plaintiff/Counter-Defendant BOARDRIDERS, INC. |

ANSWER AND AFFIRMATIVE DEFENSES TO GREAT AMERICAN INSURANCE COMPANY'S COUNTERCLAIMS TO COMPLAINT